## Porter v. Stoll Oil Refining Company et al.

(Decided February 12, 1932.)

ROBERT F. VAUGHAN and GAVIN H. COCHRAN for appellant.

SELLIGMAN, SELLIGMAN & GOLDSMITH for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Herbert R. Porter was employed by the Stoll Oil Refining Company as manager of its filling station, located at Twenty-Sixth and Chestnut streets in Louisville, Ky. Both employer and empoyee had accepted the provisions of the Workmen's Compensation Act (Ky. Stats., secs. 4880-4987). Porter's duties required him to be at the station on alternate days from seven o'clock in the morning until eleven o'clock at night. On other days he was permitted and expected to sell on commission, in a territory assigned to him, coupon books serially numbered, issued by his employer. The coupons in these books were exchanged by the purchasers for products sold by the Oil Company at its Twenty-Sixth street station. On January 8, 1928, Porter worked at the station. At 11 p. m. he closed the station and started to his home, which was located on Twenty-Second street, about four squares from his place of work. Near Twenty-Fifth and Chestnut streets, and about a square from the station where he worked, he was accosted by a negro, who walked with him to a point on Twenty-Second street nearly opposite his home, where Porter informed the negro that he went no farther. Thereupon the negro ordered Porter to hold up his hands. As Porter stooped over to put down a basket that he was carrying, the negro shot him and fled.

At the time he was shot, Porter had on his person two coupon books, a copy of his daily sales report, and probably other papers pertaining to the affairs of the company for which he worked. None of Porter's belongings were taken from him, and he immediately crossed the street to his home. He was met at the door by his wife, who had heard the report from the pistol. Porter was shot at 11:07 p. m., and at 11:15 p. m., Sergeant Lipscomb, of the police department, arrived at the Porter home in answer to a telephone call. The police officer questioned him as to the shooting, and Porter, although in great pain, gave a description of his assailant and a connected account of the occurrences leading up to the shooting, including the conversation between him and the negro. Porter died on January 10, 1928. His assailant was later apprehended, tried and convicted. Williams v. Com., 230 Ky. 327, 19 S. W. (2d) 964.

Upon application by Porter's widow for compensation under the provisions of the Workmen's Compensation Act, the board entered an order denying her claim, on the ground that the death of Henry R. Porter did not result from an injury received by him by accident arising out of and in the course of his employment. The appellant filed a petition for review in the circuit court, which entered a judgment affirming the order of the board, and, from that judgment, this appeal is prosecuted.

It is appellant's contention that the evidence authorizes a finding that Porter's death was the result of an accident arising out of and in the course of his employment. On the other hand, appellees contend that all the evidence introduced before the Workmen's Compensation Board tending to show how the injury to Porter was received is incompetent, but even though this alleged incompetent evidence is considered, that appellant wholly failed to prove that her husband's death resulted from an accident arising out of and in the course of his employment.

The evidence introduced to prove how and why Porter was killed consists of statements made by the deceased in the presence of his wife and Sergeant Lipscomb. It is argued by appellee that the testimony of both of these witnesses is incompetent, because not properly within the res gestæ exception to the hearsay rule, and that the testimony of Mrs. Porter is also incompetent because violative of section 606, subsec. 2, of the Civil Code of Practice.

We are strongly persuaded that the argument is sound to the extent that all of Lipscomb's and most of Mrs. Porter's testimony fails to come within the limits of the res gestæ rule, and that all of her testimony is violative of the cited provision of the Code. But conceding the competency of this evidence for present purposes, and without deciding the question, we have concluded that the evidence fails to show that Porter's death resulted from an accident arising out of and in the course of his employment. The shooting occurred after Porter had ceased work at the filling station for the day, and at a place at least four squares from his employer's premises and while he was walking home. He was carrying no money belonging to his employer, but the receipts of the day had been locked in a safe. It was the custom and the duty of each of the managers of the filling station at the close of each day's work to place the money received

during the day in a safe in the station provided for that purpose. It is true that Porter was carrying on his person two coupon books belonging to his employer, and that he was dressed in a uniform indicating the nature of his employment. While he was permitted to sell the coupon books at any time, and while it was for the mutual benefit of himself and his employer that he should have them with him at all times, he carried them home with him at night especially for his own convenience. It was not his custom to work after his regular hours at the station selling the coupon books, but he spent the following day at this work, beginning about 8:30 a. m.

It is appellant's theory that Porter's assailant knew the time the filling station would be closed and that he saw Porter counting the money taken in during the day, but did not see him deposit it in the safe, and that he followed Porter believing the latter had the money upon his person, and that he attempted to rob him ,with the expectation of obtaining the company's property. This is mere speculation and an inference not necessarily deducible from the evidence.

In defining the terms found in section 1 of the Workmen's Compensation Act, this court said in Phil Hollenbach Co. v. Hollenbach, 181 Ky. 262, 204 S. W. 152, 155, 13 A. L R. 524:

> "The words 'in the course of,' in section 1 of the act, refer to the time, place and circumstances of the employment, and excludes the time, place, and circumstances of the accident, if the time, place, and circumstances are not within the 'course of the employment.' "

The facts here do not bring the accident within the term "in the course of the employment," since at the time of the accident the employee had ceased work for the day, and was at a place where his employment did not require him to be. If appellant's argument is sound, then liability would attach under the act where an employee, such as Porter, at any hour of the day or night and at any place, is killed for the purpose of robbery, and he at the time is dressed in a uniform indicating the nature of his employment and has on his person property of his employer, though at the time he is engaged in some enterprise bearing no relation to his employment. Merely wearing a uniform and carrying on his person coupon

books and papers pertaining to his employer's business did not render Porter's employment continuous. He had closed the filling station and concluded his work for the day. By the terms of his employment he was not required to be at the filing station until the second day thereafter, and whether or not he worked on the next day was optional with him. When he worked on these alternate days he did so on a commision basis.

The Compensation Act should be liberally construed so as to carry out its beneficent purpose to protect injured employees and their dependents; but to permit a recovery of compensation under the facts presented here would require an interpretation unauthorized by the language or the underlying spirit of the act.

This case has been ably and exhaustively briefed on both sides, and many cases are cited and distinguished. Many of them belong to the class known as "horseplay" cases, illustrated by Hazelwood v. Standard Sanitary Manufacturing Co., 208 Ky. 618, 271 S. W. 687, and many are "personal grudge" cases, illustrated by January-Wood Co. v. Schumacher, 231 Ky. 705, 22 S. W. (2d) 117. None of these cases is directly in point in the instant case. Factual situations are never identically the same, and the facts in the particular case under consideration must determine whether or not the accident arose out of or in the course of the employment. None of the cases cited and relied on by appellant involve facts so nearly parallel to the facts in the instant case as to be of a controlling nature.

The circuit court did not err in affirming the order of the Compensation Board, and its judgment is affirmed.