WILSON *v.* INDIANA GAS & WATER CO., INC.

[No. 18,707. Filed December 5, 1955. Rehearing denied January 19, 1956. Transfer denied March 13, 1956.]

*Gordon G. Beemer,* of Crawfordsville, for appellant.

*William B. Weisell, Slaymaker, Locke & Reynolds, (Locke, Reynolds, Boyd & Weisell),* of Indianapolis, for appellee.

KELLEY, J.—Appellant appeals from an award of the Full Industrial Board denying him compensation. His assignment that the award is contrary to law, being the only sufficient and proper assignment, presents all questions.

It was found by the Board that appellant was an employee of appellee at an average weekly wage of $50.00 but that he did not sustain an accidental injury

arising out of and in the course of his employment and that his disability was neither caused by nor aggravated by his employment with appellee.

The sole question for our determination, therefore, is whether the evidence submitted to the Board leads inescapably to a conclusion contrary to that reached by the Board. If it does not then the award must be affirmed.

There was evidence to the effect that appellant, a young man of nineteen, was in the employ of appellee from September, 1953, to June 2, 1954. His principal work was digging ditches and trenches, and locating and preparing the ground around leaks in the pipes. In doing this work he used the spade, shovel, and pick. The locale of the work was in Crawfordsville, Indiana, and on the Linden pipe line which extends some nine miles between Linden and Crawfordsville.

Appellant first testified that on Tuesday, May 25, 1954, he was hand-digging a trench in the 1400 Block of Wabash Avenue in Crawfordsville, that the ground was hard and had bricks and pieces of concrete in it, that while digging "he had sharp pains in his left ankle when he hit a brick bat," that he finished out the day with the pain still existing, and that he did not tell his employer about the injury because "he thought it was a bruise and it would go away."

Appellee's evidence disclosed that the Wabash Avenue trench, whereon appellant had said he was injured on May 25, 1954, was dug during the time from April 1 to April 15, 1954, and that appellant had worked on this trench on April 1 and April 2, only. Appellant was then recalled to the stand and said that he might have been mistaken about the accident happening in the 1400 Block of Wabash Avenue and that "it might

have happened somewhere else," that the accident did happen on May 25, 1954 and that he was using a spade on that day but "he couldn't say for sure whether or not he was digging in any hard ground."

Other than appellant's general statement, made after partial reversal of his previous testimony, that an accident occurred on May 25, 1954, and that he was using a spade on that day, the evidence does not reflect just where the accident happened, how it happened, or any of the circumstances thereof. Appellant's evidence shows that he continued working Wednesday, Thursday, Friday, and the following Tuesday. He testified that his foot pained him during all that time and that he limped because of his injury and told his co-worker of it. The latter two statements are contradicted by appellee's evidence. The evidence does not disclose that appellant made a report of the alleged accident to his immediate superiors or the appellee until after he quit his employment on June 2, 1954.

The medical evidence is to the effect that muscle spasm of appellant's left foot and ankle was found, that a cast was applied, and that there was no resulting permanent impairment. The physician testified that the injury could be caused by pushing a spade, that there are a variety of other possible causes, and that it could develop "Without any incident as far as the patient's awareness is concerned."

There is considerable evidence in the record, extending in time as far back as April 1, 1954, pertaining to appellee's record of where appellant worked at different times and whether the ground being dug into by appellant was hard or soft, that the walk by appellant to Linden (the Linden pipe line) occurred around April 28th to April 30th, rather than in May as testified to

by appellant, that appellant pulled the heel off his shoe and continued to walk without it for more than one day, and that appellant did not limp or say that he had hurt his foot in the use of the spade, all of which we consider unnecessary to here detail.

As we view the record, the appellant, having the burden of establishing an accidental injury arising out of and in the course of his employment, undertook to sustain that burden by his testimony that somewhere, while he was in appellee's employ, on May 25, 1954, he did injure his left foot and ankle by the use of a spade and that he couln't say for sure whether or not he was then digging in hard ground. Appellant then proceeds to urge, in effect, that this testimony, being uncontradicted, was sufficient to sustain the burden and that the Board, in deciding against appellant, ignored or rejected such evidence and, therefore, the award of the Board "was arbitrary, contrary to law, and a gross miscarriage of justice."

The Board, of course, as has been said by our courts, cannot arbitrarily reject or ignore evidence of probative value. "Of course the trier of the facts cannot arbitrarily reject items of oral evidence but even though a particular item of evidence is not expressly or directly contradicted this does not prevent the trier from taking into consideration all of the other evidence including circumstances and surroundings that might in any way affect the weight or credibility of such evidence and the trier may disregard oral evidence if considered unreasonable or inconsistent with facts and circumstances shown by other evidence in the case." *Wright* v. *Peabody Coal Co.* (1948), 225 Ind. 679, 686, 77 N. E. 2d 116.

In the instant matter, the Board was certainly authorized, and in fact it was its duty, to weigh and bal-

ance appellant's said testimony in connection with, among other things, the absence of any evidence as to the circumstances surrounding the occurrence of the alleged accident, appellant's reversal of his testimony as to where the asserted accident occurred and his inability to give any approximate location or place of the happening thereof, the change by the appellant of his original testimony that the ground where he was using the spade was hard and contained pieces of concrete and bricks to a statement that he couldn't say for sure whether or not he was digging in hard ground, the failure of appellant to report or tell his foreman, or anyone else, within a reasonable time thereafter, of the alleged fact that he had sustained an accidental injury to his foot, and the fact, as testified to by appellant, that he continued to work and walk the whole of Tuesday, May 25th, 1954, the following Wednesday, Thursday, Friday, and the ensuing Tuesday (Saturday and Sunday being off days and Monday a holiday), and lend such weight and credibility to appellant's testimony as the Board deemed it entitled to under all the evidence, facts, and circumstances apparent before it. And this power of the Board to determine the ultimate fact necessarily embraced also its right in considering all the evidence to reject such testimony as substantiating the occurrence of an accident resulting in the injury asserted by appellant.

Appellant, however, tenaciously clinging to *Studebaker Corporation* v. *Jones* (1937), 104 Ind. App. 270, 10 N. E. 2d 747, further insists that appellant here, as Jones in the cited case, "only knew what had actually happened after he had consulted his doctors," from which statement it is apparently intended that we should imply and the Board should have inferred that appellant was unaware of the nature of his injury

prior to examination by his physicians and, therefore, could not determine nor testify as to where or how the alleged accident occurred or make a report thereof to appellant. Here again we must observe that these were factual matters for the determination of the Board and we cannot usurp the function of the Board in that regard.

Appellant "strongly urges this Court's close comparison of the Jones case (above cited) and the instant case in granting an award in appellant's favor" and says "that the facts in the instant case could be substituted into that decision without changing a single word or punctuation mark." There is one vital difference, however, between that case and the one here under consideration to which appellant does not advert and that difference is that in that case the Board resolved all essential factors in claimant's (Jones') favor whereas here the award was adverse to appellant. The court in that case made special mention of its commitment to the established doctrine "requiring us to consider only the evidence most favorable to appellee and preventing us from weighing conflicting evidence."

We are committed to the same doctrine in this case. It (the stated doctrine) cannot be applied or withheld in application as we may or may not incline toward the same result as that attained by the Board. The rule is, and must be, of universal and equal application to all cases regardless of which party may have been the successful one in the trial forum.

In this case now before us the finding of the Board was adverse to appellant and on this appeal the latter bears the burden of establishing either that the evidence most favorable to the appellee discloses no substantial factual foundation for the award or the evi-

dence submitted in the cause is of such character as to force us to a conclusion contrary to that reached by the Board. In our opinion, the appellant has failed to sustain this burden.

The award is affirmed.

Kendall, J., dissents with opinion.

Pfaff, J., concurs in dissent.

### DISSENTING OPINION

KENDALL, J.—I find myself unable to agree with the conclusion reached by the majority in this case. After a consideration of all the evidence, it is my opinion that the same leads inescapably to an opposite conclusion than that reached by the Industrial Board. The majority opinion stresses with great emphasis the fact that appellant did not know exactly on what street he was working when he obtained the foot injury as the result of pushing a spade in the ground. To my way of thinking that fact is not difficult to understand when one considers the numerous places appellant worked in the streets at the direction of appellee's foreman. The writer of this dissent is unable to tell from memory what particular case he was working on even a few weeks or months ago. The fact remains, however, that it is uncontradicted that appellant was in the employ of appellee from September, 1953, until June 2, 1954; that he was doing the work as outlined in the majority opinion on or about May 25, 1954; that during the course of the employment he dug a trench at the instruction of the foreman; that during the digging he felt pain in his foot which incurred medical bills. The uncontradicted medical testimony of appellant's doctor was that the appellant's injury *could* have been caused by the spading. In the case of *Magazine* v. *Shull* (1945),

(Transfer Denied 1945), 116 Ind. App. 79, 60 N. E. 2d 611, this court said:

" . . . In this state, however, it is settled law that the opinions of medical experts using words such as 'might,' 'could,' 'likely,' 'possible,' 'may have,' etc., in testifying concerning the causal connection between accident and disability, if coupled with other credible evidence of a nonmedical character, is substantial evidence and sufficient to sustain an award."

True it is, the record shows that appellant corrected his first statement as to the location of the trench where he was digging when injured. I believe that under our law the exact location or time of the accident is immaterial so long as it is alleged and proven that the injury was received by appellant while working for appellee and in the course of his employment. The record is replete, in my opinion, that it is shown that the origin of the injury was accidental and that it occurred at a place and time where appellant was supposed to be working under the direction of appellee's agents. It is uncontradicted that while so working appellant felt sharp pain in his left ankle with pain he had never felt before. Appellee makes much of the fact that he did not report the injury on the day that it occurred. That argument is of little avail. Appellant did not know for certain the nature and extent of the injury until after examination thereof by Dr. Crawford. The next day appellant went to see the superintendent of appellee company and reported the accident.

There is no doubt that for an injury to be compensable, it must arise out of and be in the course of the employment. One without the other is not sufficient. *Tom Joyce 7 Up Company* v. *Layman* (1942), 112 Ind. App. 369, 44 N. E. 2d 998.

In my opinion, the appellant has met the burden of proof as required and that the findings of the board are contrary to law.

I recognize the general rule that the Industrial Board as the trier of the facts is charged with the duty of concluding as to the ultimate facts of an accidental injury arising out of and in the course of employment and that for such purpose it possesses the exclusive prerogative of weighing the evidence and drawing reasonable inferences therefrom. In my opinion, however, this rule does not give the Board the prerogative to disregard the uncontradicted evidence in the showing that the accident complained of was accidental and occurred in the course of employment.

In the case of *Miller* v. *Beil* (1921), 75 Ind. App. 13, 129 N. E. 493, the court, in announcing its decision, said:

"There is no direct evidence that appellees' decedent fell in the tank as a result of an epileptic fit, . . ."

In that case the court held that the evidence was sufficient to sustain the findings of the Industrial Board, but the facts are entirely different for here there is direct and positive evidence of the causal connection of the injury and of working for appellee at the time of the injury.

The facts of the case under consideration are entirely different from the case of *Kinsey* v. *Sheller Manufacturing Corporation* (1955), 125 Ind. App. 493, 126 N. E. 2d 267, in which this court affirmed an award of the Industrial Board denying compensation.

The incident involved certainly comes within the general definition of the term "accident" as used in Workmen's Compensation Act, which means, "any unlooked

for mishap or untoward event not expected or designed". *Burroughs Adding Machine Co.* v. *Dehn* (1942), 110 Ind. App. 483, 39 N. E. 2d 499.

Where an accident is in no manner related to the employment an attempt to make the employer liable would be clearly unreasonable, unjust and arbitrary, but an injury such as the one now under consideration arises out of employment when there exists a causal connection between it and the employment, or the same idea in a different form, when the employment is in some way responsible for the injury.

This court many times has announced the general rule that an injury by accident arises out of the employment when there is a causal connection between it and the performance of some service of the employment. *In re Harraden* (1917), 66 Ind. App. 298, 118 N. E. 142; *Empire Health, etc., Ins. Co.* v. *Purcell* (1921), 76 Ind. App. 551, 132 N. E. 664; *Williams* v. *School City of Winchester* (1937), 104 Ind. App. 83, 10 N. E. 2d 314.

Considering all of the evidence, there can be no doubt in my mind that the undisputed evidence is such that there was a causal relation between the act of digging in the trench with a spade and the injury complained of which resulted in the injury of appellant's foot, and that the appellant experienced an "accident" as used in the Workmen's Compensation Act when the digging in the course of his employment resulted in a mishap when the same was neither expected or designed.

To have reached the finding that the board did, in view of the evidence, they had to arbitrarily reject the uncontradicted evidence of probative value.

I believe that the award of the board should be reversed.

Pfaff, P. J., concurs in dissent.

NOTE.—Reported in 130 N. E. 2d 498.